**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **ROBERT LEE MURPHY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: GJH-19-3023** |
| **FRANK B. BISHOP,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Self-represented Plaintiff Robert Lee Murphy, an inmate presently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, initiated the above-captioned action alleging that Frank B. Bishop, W. Bohrer, and K. Lamp failed to respond to his repeated requests "to be circumcised – to practice [his] religion." ECF No. 1. The matter was construed and instituted as a civil rights action pursuant to 42 U.S.C. § 1983 against the three named Defendants. On February 10, 2022, Murphy filed a Motion for Leave to File an Amended Complaint (ECF No. 21), which the Court granted (ECF No. 29). In the Amended Complaint, Murphy alleges violations of the Free Exercise Clause of the First Amendment; the Equal Protection Clause of the Fourteenth Amendment; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*; and the Maryland Declaration of Rights. ECF No. 30. He seeks a declaratory judgment, a preliminary and permanent injunction directing Defendants to allow him to be circumcised and to take part in a "religious preference count out," as well as monetary damages. *Id.* at 6.

1

Defendants moved to dismiss the Amended Complaint or, alternatively, for summary judgment.  ECF No. 27.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Murphy that the failure to file a memorandum in opposition to Defendants' motion could result in dismissal of the case.  ECF No 28.  Murphy filed nothing further.

No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons set forth below, Defendants' Motion, construed as a motion for summary judgment, shall be granted, and Murphy's request for injunctive relief shall be denied.  As the case is not proceeding with regard to Murphy's federal claims, the Court declines to exercise supplemental jurisdiction over his claims brought pursuant to the Maryland Declaration of Rights.  *See* 28 U.S.C. § 1367(c)(3).  The Motion to Strike Entry of Appearance (ECF No. 32) filed by counsel for Defendants shall be granted.

## I.   BACKGROUND

Murphy alleges that on July 1, 2019, he submitted a request to Kevin Lamp, the Chaplain at NBCI, asking to be "added to the Islam count out and [to] inform the Warden that [Murphy] needed to be circumcised to practice [his] religion."  Am. Compl., ECF No. 30 at 2.  Murphy also submitted a request to the Warden asking him to consult with the Chaplain regarding this matter. *Id.*

After not receiving any response, Murphy resubmitted his requests to the Chaplain and Warden on August 1, 2019, and sent a similar request to the Chief of Security.  *Id.*  Again having received no response, Murphy sent another round of requests to the Chaplain, Warden, and Chief of Security on September 25, 2019, asking for circumcision and inquiring why no one had responded to his prior requests.  *Id.*

Murphy claims that Defendants' refusal to respond and to grant his request amounts to a violation of his constitutional rights.  *Id.*  It appears Murphy is alleging that unless he is

circumcised, his prayers are not valid.  *Id.* (citing "Islam Q&A @ https://islamqa.info '107701: Conditions of prayer being valid'").

According to Defendants, when Murphy entered into the custody of the Maryland Department of Public Safety and Correctional Services ("DPSCS") in 2011, he registered his religious affiliation as "Islam Nation of Islam."  Case Management System, ECF No. 27-1 at 3.  On January 18, 2018, Plaintiff changed his religious affiliation to "Islam Moorish, Temple of America," and less than a year later, on December 7, 2018, to "Protestant, Seventh Day Adventist."  *Id.*  Any inmate may change their religious affiliation, at any time, by simply filling out and filing a religious affiliation form.  Decl. of Lamp, ECF No. 27-1 at ¶ 3.  At the time of filing of Defendants' dispositive motion, Murphy remained registered as a "Protestant, Seventh Day Adventist."  *Id.*  There is no information before the Court that after registering as a "Protestant, Seventh Day Adventist" in late 2018, Murphy filed a religious affiliation form declaring he was a Muslim.

Chaplain Lamp states that an inmate must be registered as affiliated with a particular religion in order to participate in that religion's services and activities.  ECF No. 27-1 at ¶ 3.  According to Lamp, there is nothing preventing or prohibiting Murphy from changing his religious affiliation to any denomination, including Islam.  *Id.* at ¶¶ 3, 6.  There is no requirement that Murphy be circumcised in order to fully participate in the services and programs offered to Islamic inmates.  *Id.* at ¶ 6.  Rather, he only needs to submit an updated religious affiliation form.  *Id.* at ¶ 3.

Contah Nimely, M.D., the Deputy Director of Clinical Services at DPSCS, states that DPSCS policy does not provide for medical procedures that are not medically indicated or necessary, including procedures for cosmetic or religious reasons.  Decl. of Nimely, ECF No. 27-

2 at ¶ 2.  The procedure requested by Murphy, circumcision, is performed if the DPSCS contractual medical provider determines that it is medically indicated.  *Id.*  Such a procedure would require transport of the inmate to an offsite location, which in turn would necessitate three correctional officers to accompany a maximum-security inmate.  *Id.* at ¶ 3; *see also* Decl. of NBCI Warden Jeff Nines, ECF No. 27-3 at ¶ 3.  In order to minimize any danger to the public as well as the cost and resources needed to transport a maximum-security inmate out of the institution, NBCI policy mandates that inmates are only taken out of the institution for court or medically necessary procedures.  ECF No. 27-3 at ¶ 5.

## II.    STANDARDS OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019).  To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).  However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from

4

the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

*Pro se* complaints must be construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259–60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). However, despite this liberal construction requirement, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required to "conjure up questions never squarely presented to them" nor "construct full blown claims from sentence fragments." *Id.*

Defendants' motion is styled as a motion to dismiss or in the alternative, for summary judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post-discovery).

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one "that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may rely on only facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). When ruling on

a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Here, because the Court considers evidence submitted by the parties, Defendants' motion will be reviewed as a motion for summary judgment.

## III.   DISCUSSION

Plaintiff's claim centers on the argument that Defendants' refusal to acknowledge or grant his request for circumcision violates the Fourteenth Amendment's Equal Protection Clause, the First Amendment's Free Exercise Clause, and RLUIPA.   The Court shall address each in turn.

### A.  Equal Protection

The Equal Protection Clause generally requires the government to treat similarly situated people alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).   To show that his equal protection rights were violated, a plaintiff must demonstrate that he was treated differently than similarly situated inmates and the discrimination was intentional or purposeful.   "If he makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" *Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

Here, Murphy summarily asserts that Defendants have violated his equal protection rights. In his Amended Complaint, Murphy does not allege, much less demonstrate, that he was treated differently from similarly situated inmates.   Indeed, Murphy does not mention any other inmate who either shares the same religious views as him or is requesting circumcision for religious reasons. *See* ECF No. 30.   Because Murphy has not shown that his equal protection rights were violated, his claim under the Fourteenth Amendment cannot proceed. *See Bell Atl. Corp. v. Twombly*, 550 U.S.544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B.  Free Exercise Clause & RLUIPA

Under the Free Exercise Clause of the Constitution, inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam).  In order to state a claim for violation of rights secured by the Free Exercise Clause, as a threshold matter, an inmate must demonstrate that he holds a sincere religious belief, and that a prison practice or policy places a substantial burden on his ability to practice his religion.  *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (citing *Thomas v. Review Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).  Prison restrictions that affect the free exercise of religion but are related to legitimate penological objectives, however, do not run afoul of the Constitution.  *See Turner v. Safely*, 482 U.S. 78, 89–91 (1987).  To determine if the restrictions on religious exercise are related to legitimate penological objectives, courts consider:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (quoting *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006)).

Murphy also alleges violations of RLUIPA, which provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from

a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005); *see Holt v. Hobbs*, 574 U.S. 352, 357–58 (2015); *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009); *Lovelace*, 472 F.3d at 186. Thus, RLUIPA is aimed at ensuring that prisoners were entitled to similar religious free-exercise rights to those enjoyed by individuals who are not incarcerated. *See Cutter*, 544 U.S. at 715–17.

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *Holt*, 574 U.S. at 358; *Smith*, 578 F.3d at 251. Under RLUIPA, the inmate must show that the challenged policy substantially burdens his exercise of his religion. *See* 42 U.S.C. § 2000cc-2(b); *Holt*, 574 U.S. at 361. A substantial burden exists where a regulation "puts substantial pressure on [the plaintiff] to modify its behavior." *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 260 (4th Cir. 2019) (quoting *Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 556 (4th Cir. 2013)). A prison regulation also imposes a substantial burden when it "forces a person to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand." *Lovelace*, 472 F.3d at 187 (internal quotation marks and citation omitted).

Although the plaintiff does not have to show that the challenged practice is "required or essential to his [or her] religion," he must at least "demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to [his] religious practice."

*Tillman v. Allen*, 187 F.Supp.3d 664, 673 (E.D.Va. 2016) (citations omitted). "Substantial burden" under RLUIPA is the same as in the First Amendment context. *Lovelace*, 472 F.3d at 187. "[C]ourts properly consider whether the inmate retains other means for engaging in the particular religious activity . . . in assessing whether a denial of the inmate's preferred method for engaging in that religious exercise imposes a substantial burden." *Tillman*, 187 F.Supp.3d at 674 (citation omitted).

### 1. *Claims for Monetary Damages*

As a preliminary matter, Murphy's claims for damages asserted under 42 U.S.C. § 1983 may not proceed against Defendants in their official capacity. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Also barred by the Eleventh Amendment are claims brought against state employees in their official capacity because a suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

Defendants are also entitled to qualified immunity. "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Owens v. Balt. City State's Attys Office*, 767 F.3d 379, 395 (4th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, "a government official who is sued in his

individual capacity may invoke qualified immunity." *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this Court. The first prong is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id*. If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability.

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). However, the "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful. *Dist. of Columbia v. Wesby*, __ U.S. __, 138 S. Ct. 577, 589 (2018) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

Here, the Court agrees with Defendants that the facts alleged by Murphy fail to show that his constitutional rights were violated. In 2019, the United States District Court for the District of New Jersey confirmed that "only two federal courts seem to have considered the question of whether there exists a constitutional right to a religious circumcision: the United States District

Court for the District of Connecticut, in *Vega v. Lantz*, No. 3:04CV1215(DFM), 2012 WL 5831202 (D. Conn. Nov. 16, 2012), and the District Court for the Northern District of New York, in *Celestin v. Fischer*, No. 9:12-CV-1612 (GTS/ATB), 2013 WL 5406629 (N.D.N.Y. Sept. 25, 2013.)." *Tormasi v. Lanigan*, 363 F. Supp. 3d 525, 538 (D.N.J. 2019).   In both *Vega* and *Celestin*, the plaintiff prisoners claimed that the prison's denial of their circumcision requests violated their free-exercise rights, and the respective courts concluded that qualified immunity shielded the defendants.  *Id.*  Specifically, in *Vega*, the Court found "no precedent that suggests—much less clearly establishes—that a prisoner has a constitutional or statutory right to a surgery that is not medically necessary," and thus concluded that "the plaintiff has no clearly established right to circumcision."  *Vega*, *supra*, No. 3:04CV1215 DFM, 2012 WL 5831202, at *3 (citing *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) (prisoner has Eighth Amendment right to treatment for "serious" medical needs)).  Similarly, the *Celestin* Court found that "the right to a religiously-based circumcision is not well-established" and it "found no other case, establishing that an inmate has a constitutional right to demand a surgery, religious or otherwise, that is not medically necessary," thus entitling the defendants to qualified immunity.  *Celestin*, *supra*, No. 9:12-CV-1612 GTS/ATB, 2013 WL 5406629, at *8.  Citing those two cases, the *Tormasi* Court followed suit and found that the defendants' refusal to grant the prisoner plaintiff's requests for circumcision did not violate any clearly established constitutional right.  *Id.* at 539.

This Court reaches the same conclusion here.  Where no precedent establishes that a prisoner has a constitutional right to surgery that is not medically necessary or to a religiously-based circumcision, this Court finds that Defendants are entitled to qualified immunity on the § 1983 claim.

Moreover, Murphy's claim for damages under RLUIPA are also barred.  *See Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir. 2006) (holding that "Eleventh Amendment bars plaintiff's damages claim against the State" in suit alleging RLUIPA violation); *Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020).  "RLUIPA does not permit a private cause of action against state prison employees for conduct taken in their official or individual capacities, as the statute does not waive a state's sovereign immunity under the Eleventh Amendment."  *Pevia*, 443 F. Supp. 3d at 632 (citing *Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009)).  Therefore, in light of the foregoing, Murphy's claims for monetary damages cannot proceed.

### 2. Claim for Declaratory & Injunctive Relief

As to the merits of Murphy's Free Exercise Clause and RLUIPA claims, Defendants argue that they are entitled to summary judgment because Murphy is unable to show that not being circumcised substantially burdens his religious practice.  ECF No. 27 at 8.  Defendants also assert that they have a compelling government interest in denying his request that is related to a legitimate penological objective of not providing elective medical procedures.  *Id.* at 13.

In his Amended Complaint, Murphy alleges that he submitted requests to the three named Defendants indicating his intent to change his religious affiliation to Islam, as well as his belief that being circumcised is essential to his religious practice.  Defendants, however, have provided exhibits showing that Murphy did not submit a new religious affiliation form indicating his preference, which would immediately allow him to attend Islamic services and programs at NBCI. Completing a religious affiliation form is the proper procedure for registering your religion within DPSCS facilities.  Without any response to the contrary, and because Murphy had submitted several religious preference forms in the past, the Court cannot say that he was unaware of such

13

policy.  Against this backdrop, Murphy fails to demonstrate, as a threshold matter, that he holds a sincere religious belief or that NBCI's places a substantial burden on his ability to practice his religion.  *See Carter*, 879 F.3d at 139.  As such, Defendants are entitled to summary judgment on Murphy's Free Exercise Clause and RLUIPA claims.

Because Murphy has failed to aver any facts that demonstrate he is likely to succeed on the merits, his request for injunctive relief shall be denied.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (stating that a party seeking injunctive relief must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest)).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion, construed as one for summary judgment, is granted, and Murphy's request for injunctive relief is denied.  The Court declines to exercise supplemental jurisdiction over Murphy's claims brought pursuant to the Maryland Declaration of Rights.  *See* 28 U.S.C. § 1367(c)(3).  The Motion to Strike Entry of Appearance (ECF No. 32) filed by counsel for Defendants is granted.

A separate Order follows.


Date: <u>February 17, 2023</u>                    _____/s/_____
                                                                  GEORGE J. HAZEL
                                                                  United States District Judge

14